## BAKER v. UNITED STATES. *

### No. 8452.

Circuit Court of Appeals, Fifth Circuit.

Dec. 16, 1937.

A. G. Bush, of Davenport, Iowa, and Nat B. King, of Laredo, Tex., for appellants.

Douglas W. McGregor, U. S. Atty., and George O'Brien John, Asst. U. S. Atty., both of Houston, Tex.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Norman Baker and E. R. Rood were indicted and convicted for conspiring to violate, and for violating, section 325(b) of the Communications Act of 1934, 48 Stat. p. 1091, 47 U.S.C.A. § 325(b). Only one of their contentions, raised by demurrer and by motion for directed verdict and by request to charge, needs to be considered, to wit, that what they were doing is not a violation of the statute properly construed.

Baker was operating a radio broadcasting station in Mexico, near the international boundary, which could be heard over a great part of the United States. In Laredo, Tex., he and Rood had offices where and recording apparatus by which talks in English which they made were recorded on discs resembling phonograph records, which were physically sent into Mexico to the radio station and there played so as to reproduce the speeches and to broadcast them over the radio to be heard in the United States. They had no permit so to do.

Section 501 of the act, 47 U.S.C.A. § 501 provides punishment for anyone who wilfully and knowingly does any act or thing prohibited by it or declared unlawful. Section 325(b), italicized for present emphasis, reads: "No person shall be permitted to locate, use, or maintain a radio broadcast studio or other place or apparatus from which or whereby sound waves are converted into electrical energy, *or mechanical or physical reproduction of sound waves produced,* and caused to be transmitted or delivered to a radio station in a foreign country for the purpose of being broadcast from any radio station there having a power output of sufficient intensity and/or being so located geographically that its emissions may be received consistently in the United States, without first obtaining a permit from the Commission upon proper application therefor."

We reject the contention that the words "No person shall be permitted" make the section merely a direction to the Commission in issuing permits, and not a pro-

hibition laid on the public. The full expression is "No one shall be permitted" to do the named things "without a permit from the Commission." While tautological, perhaps, the meaning clearly is that no person shall do those things without a permit.

What things are forbidden? A radio station or other place from which, or apparatus whereby, (first) sound waves are converted into electrical energy, or (second) from which or whereby mechanical or physical reproduction of sound waves is produced, and, in either case, caused to be transmitted or delivered to a radio station located in a foreign country but effective in the United States for the purpose of being broadcast. There is no question here about the foreign radio station being within the act, nor that material for broadcast was furnished it from the United States. The contention is that a physical phonograph record is not forbidden to be made in the United. States and transmitted to Mexico for broadcast any more than a manuscript would be.

The words of the statute "sound waves are converted into electrical energy" evidently refer to transmission of speech or other sound to the foreign radio station by radio, telephone, or loudspeaker apparatus. Sound waves are audible vibrations of the air; and in the instances stated they are not themselves transmitted to the foreign station, but, by using an electrical sending apparatus, they are converted into electrical waves which are at destination caught up by a receiving apparatus which produces sound waves for broadcasting like the original ones—reproduces them. This was not done by the appellants.

Did they, in making and sending out what we will call phonograph records of their speeches, maintain a place from which, or use apparatus whereby, "mechanical or physical reproduction of sound waves was produced and caused to be transmitted"? We think not. In the case of such a record "mechanical or physical" means, as distinguished from electrical, are used within the meaning of the statute, both to make the indentations which constitute the record and to reproduce the sounds when the record is "played." But again the "sound waves" mentioned in the statute are the audible movements of the air. They are produced when the words are spoken which are caught by the recording apparatus. They are *reproduced* when the record is used to make them again, and not before. It is not the recording apparatus, but that playing the record, that makes *the reproduction* of the sound waves. If these records had been played in Texas, a reproduction of the sound waves would have been produced in Texas, and, if transmitted to Mexico for broadcast, a case within the statute would have been made. But the defendants had no place and no apparatus in Texas for reproducing the sound waves. They only recorded them there. It may be that what was done was intended to be prohibited, but the intention is not expressed with the clearness that is required in a penal law. The law as written does not prohibit the recordation of sound waves in the United States and sending the record to Mexico to have the sound waves there reproduced and broadcast.

The judgment is accordingly reversed for further consistent proceedings.

Reversed.